Josephine-Linker'Hart,; Justice, dissenting. I respectfully dissent. The majority has omitted from its opinion key facts that are essential to á full understanding of the case. The Arkansas State Highway Commission (ASHC) brought the condemnation action in its name pursuant to a written agreement it had entered into with the City of Siloam Springs (the City). Title to the condemned property vested in ASHC by the declaration of taking and order of possession prior to its being dismissed from the lawsuit. While the amended complaint that the City subsequently filed asserted' different statutory authority for the taking than had been asserted by ASHC, the only issues remaining tó be tried at that time were the adequacy of the compensation for the taking and the entitlement to, and amount of, attorney’s fees. The case involves land located in the Siloam Springs Historic District. Acquisition of the property was deemed necessary for a project to replace the bridge on University Street. On April 14, 2009, ASHC and the City concluded an “Agreement of Understanding” setting forth the relative responsibilities in obtaining federal funding under a program called the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (Legacy for Users program). It provided that the bridge replacement was to be paid for by 80% federal | «funds and 20% non-federal monies. In the agreement, ASHC committed to administering the federal money, preparing plans and specifications, and “[w]hen requested, provide the necessary services relative to right-of-way acquisition, appraisal, relocation, and utility adjustments and will be reimbursed for costs involved in performing these services.” In accordance with its agreement with the City, on September 1, 2011, ASHC filed a complaint and a declaration of taking against the Muruagas, stating that it was taking title to the' Muruagas’ real property pursuant to Arkansas Code Annotated sections 27-67-301 to -321 (Repl. 2010). The declaration stated that just compensation for the condemned real property was $13,950, and ASHC had deposited that amount into the registry of the court. On September 9, 2011, title vested in ASHC when it received an order of possession from the circuit court. The Muruagas subsequently answered ASHC’s complaint,- essentially asserting that the compensation offered by ASHC was inadequate. On December 6, 2011, the City passed a resolution to reimburse ASHC for its filing fee and the money that it had deposited into the registry of the court. Subsequently, on June 8, 2012, the circuit court granted a motion substituting the City for ASHC. The order stated that while ASHC had filed the condemnation action, the City should be substituted as the proper plaintiff. ASHC was dismissed from the case. The order further directed the City to file an amended complaint setting forth its statutory authority to condemn the property. The order also recited that the Mu-ruagas had consented to the entry of the order. The amended complaint asserted that the City was authorized to proceed with condemnation- under the authority granted to municipalities pursuant to Arkansas Code IflAnnotated sections 18-15-301 to - 309 (Repl. 2003). As ASHC had in the original complaint, the City claimed that it was seeking immediate possession of the property and recited that just compensation for the taking, $13,950, had been deposited in the registry of the court. The Muruagas answered, and they admitted that the City was proceeding pursuant to sections 18-15-301 to -309. As they did in the original complaint, the Muruagas asserted that the compensation was inadequate. Despite the assertion in the complaint that the City was acting in accordance with- sections 18-15-301 to -309, there is no evidence in the record that the City complied with the formalities required by the statute. ■ Moreover, the City acknowledges in the'argument section of its brief that it did not undertake tfrese formalities. ■ After a February 20, 2014 jury trial in which the Muruagas ' were awarded $22,253, the Muruagas filed a petition for attorney’s fees. In justifying their request for $15,742.25 in fees, the Muruagas cited as statutory authority Arkansas Code Annotated section 27-67-317(b). The circuit court acknowledged- that the Muruagas’ decision to litigate would have been .based on their expectation that they would recover attorney’s fees because ASHC initiated the action. The circuit court granted the fee petition, finding that the fee award was proper pursuant to sections 27-67-301 to - 321. It also found that ASHC hád originally acquired the Muruagas’ property and that the City had “affirmatively sought and received court approval to assume the ASHC’s liability for just compensation owed in this case which was pending determination under Ark.Code Ann. •§§ 27-67-301 to -321.” From the inception, pursuant to the above-referenced Agreement of understanding, ÁSHC was acting as the City’s agent in securing funding under the'Legacy for Users program, ho Acting as the City’s agent,' ASHC took the necessary steps to appraise and acquire the right-of-way for the. bridge project. Significantly, the agreement obligated the City to indemnify ASHC for the costs of performing this service. This necessarily, included indemnification for the potential liability for attorney’s fees under section 27-67-317(b), which did indeed manifest in this case. The fact that the City relieved its agent of further responsibility in the lawsuit does not change the- fact that the land had already been condemned and that title to the property had already vested in ASHC pursuant to Arkansas Code Annotated sections 27-67-301 to -321. Arkansas Code Annotated section 27-67-315 states, Immediately upon the making' of the deposit provided for in § 27-67-314, title to the lands in fee simple, or a conditional fee if mineral rights are sought to .be preserved to the property owner, or a lesser estate or interest therein as is specified in the declaration, shall vest in the persons entitled thereto. Accordingly, even though the City asserted that it was condemning the real property pursuant to Arkansas Code Annotated sections 18-15-301 to -309, it could not accomplish this task because the Muruagas no longer had legal title to or possession of, the property., Purporting to invoke in its pleadings the eminent-domain authority vested in the City by sections 18-15-301 to -309 does not mean that ownership of the real property was restored to the Mu-ruagas, that the “just compensation” was calculated anew, that the process of taking the property had started over with all attendant formalities required by section 18-15-303, or that the litigation expenses — indeed the very decision to litigate — had not already accrued. The substitution of the City as the real party in interest was nothing more than a discharge of the City’s agent. |nThe liabilities that the agent incurred on the City’s behalf remained. The City was bound by the actions of its agent performed within the scope of its authority. Nat’l Union Fire Ins. Co. v. Sch. Dist. No. 55, 122 Ark. 179, 182 S.W. 547 (1916). Accordingly, the City was responsible for the attorney’s fees that the circuit court awarded under ■ section 27-67-317(b). It is important to note that the City concedes that it did not get substituted into the case until the order of possession had been entered but asserts that the Mu-ruagas did not argue that the City had failed to properly obtain an order of possession under sections 18-15-301 to -309. The majority accepts this argument without scrutiny. However, when the City filed its amended complaint, title had already vested in ASHC. The'Muruagas, therefore, did not have'standing to contest the taking of title ■to the property because they no longer had an interest in the land. The amount of compensation that they were entitled to, however,, remained a> live issue. The City — alone or through its agent — was still responsible for the compensation and attorney’s fees. In awarding attorney’s fees, the circuit court did not abuse its discretion. While I am mindful that I suggest a slightly different rationale for affirming the circuit court, it has long been our stated practice to affirm the circuit court if it reaches the right result for any reason. See, e.g., Hurt-Hoover Invs., LLC v. Fulmer, 2014 Ark. 461, 448 S.W.3d 696. Baker, J.,; joins.